IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

ROY VAP, AND CON MUELLER,

          Plaintiffs,

vs.

BIG IRON, INC.,

          Defendant.

4:16CV3008

**FINDINGS RECOMMENDATION AND ORDER**

The defendant has moved for partial dismissal and to compel arbitration of certain claims. (Filing No. 12). For the reasons stated below, Defendant's motion to dismiss should be granted in part and denied in part, and Defendant's motion to compel arbitration is denied.

## BACKGROUND

Plaintiffs worked as independent sales representatives for Defendant from 2012 to 2015. Prior to beginning the position, each plaintiff signed the "Big Iron Independent Sales Representative Agreement" (the "Agreement") which outlined the terms and conditions of their position with Big Iron. Plaintiffs allege that throughout their employment they worked over 40 hours a week, did not receive compensation for overtime or expenses, and were unable to receive employee benefits including pension or welfare benefits and health insurance. Instead, Plaintiffs were compensated based on commissions from their sales.

Plaintiffs filed their Complaint asserting that they, and others similarly situated, were Big Iron employees as that term is defined under Nebraska law and the Fair Labor Standards Act. (Filing No. 8 at CM/ECF p. 3). They raise several claims in their complaint. The second claim seeks employment benefits, including a claim under the

Employment Retirement Insurance Security Act ("ERISA), 29 U.S.C. § 1132. (Id. at CM/ECF p. 4). Plaintiffs' third claim alleges Defendant either miscalculated or manipulated Plaintiffs' sales commissions. (Id. at CM/ECF pp. 4–5). For relief, Plaintiffs request compensation for the wages owed, employment-related expenses, and payment of proper contributions owed to the government under the Federal Insurance Contributions Act ("FICA"), 26 U.S.C. § 1301 et seq., and the Federal Unemployment Tax Act ("FUTA"), 26 U.S.C. § 3301, et seq. (Id. at CM/ECF pp. 6–7).

I. Motion to Dismiss

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter which, if accepted as true, states a plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A claim is facially plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. While the Court must accept as true all facts pleaded by the nonmoving party and interpret all reasonable inferences from the pleadings in favor of the nonmoving party, Gallagher v. City of Clayton, 699 F.3d 1013, 1016 (8th Cir. 2012), a pleading that offers labels and conclusions or a formulaic recitation of the elements of a claim will not do. Iqbal, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief requires the reviewing court to draw on its judicial experience and common sense. Id. at 679.

Defendant moves to dismiss Plaintiffs' second claim requesting employee benefits, arguing Plaintiffs have failed to exhaust administrative remedies under the ERISA.

ERISA requires that every employee benefit plan provide "a reasonable opportunity to any participant whose claim for benefits has been denied for full and fair

review[.]" 29 U.S.C. § 1133(2). The purpose of allowing administrative review of denied claims is to provide claim administrators the opportunity to correct errors, decrease claim cost and time, and promote the consistent treatment of claims. Wert v. Liberty Life Assur. Co. of Boston, 447 F.3d 1060, 1066 (8th Cir. 2006). As such, the Eighth Circuit has generally maintained that claimants must first exhaust the benefit appeals procedure before presenting a claim for wrongful denial of ERISA to the court. Midgett v. Wash. Group Int'l Disability Plan, 561 F.3d 887, 898 (8th Cir. 2009) (citations omitted). A claimant who "fails to pursue and exhaust administrative remedies that are clearly required under a particular ERISA plan" will have his claim barred Id. But if seeking an administrative remedy would be futile, the party may be excused from this usual requirement. Id. The exhaustion requirement may also be excused where the claimant is denied "meaningful access" to the administrative review system in place. Boyan v. Coventry Healthcare of Neb. Inc., 2007 WL 119163 (D. Neb. Jan. 10, 2007); Ruttenberg v. United States Life Ins. Co., 413 F.3d 652, 662 (7th Cir. 2005); Curry v. Contract Fabricators, Inc. Profit Sharing, Plan, 891 F.2d 842, 846 (11th Cir. 1990); Baker v. Universal Die Casting, Inc., 725 F.Supp. 416, 420 (W.D. Ark. 1989).

Defendant argues Plaintiffs were not employees and plan beneficiaries. But it also argues Plaintiffs must exhaust the administrative remedies available only to plan beneficiaries. Defendant cannot have it both ways. Plaintiffs were not members of any benefit plan. The Agreement stated they were not allowed to be part of any employee benefit plan. (See Filing No. 14-3 at CM/ECF p. 1). Since they were not plan beneficiaries, Plaintiffs did not have meaningful access to any of the documentation or information necessary to file an appeal for administrative review. Even if Plaintiffs had the information required and had attempted to make an appeal, the ERISA appeals process is designed to provide plan beneficiaries with a full and fair review of their denied claims. Plaintiffs could not appeal a denied claim: Since they are not plan beneficiaries, they could not make a claim much less have one denied. Any attempt to

seek administrative remedies by the plaintiffs would have been futile. Accepting the facts presented by Plaintiffs as true, they have stated a plausible claim for relief and Defendant's motion to dismiss Plaintiffs' second claim should be denied.

The defendant also moves to dismiss that portion of Plaintiffs' prayer for relief which requests recovery of all FICA and FUTA contributions. Defendant argues no private right of action exists under FICA and FUTA and Plaintiffs' claim must be dismissed.

While numerous courts have weighed on the issue, the Eighth Circuit has not addressed whether FICA and FUTA create private rights of action. Regardless, the majority of courts which have addressed the issue have held there is no private right, implied or otherwise, in the payment of FICA or FUTA contributions. Umland v. Planco Fin. Servs., 542 F.3d 59 (3d Cir 2008); McDonald v. S. Farm Bureau Life Ins. Co., 291 F.3d 718 (11th Cir. 2002); Glanville v. Dupar, Inc., 727 F. Supp. 2d 596 (S.D. Tex. 2010); Gifford v. Meda, 2010 WL 1875096 (E.D. Mich. May 10, 2010); Bendsen v. George Weston Bakeries Distrib., 2008 WL 4449435 (E.D. Mo. Sept. 26, 2008); Westfall v. Kendle Intern., CPU, LLC, 2007 WL 486606 (N.D. W. Va. Feb. 15, 2007); but see Stewart v. Project Consulting Servs., 2001 WL 1000732 (E.D. La. Aug. 29, 2001); Sanchez v. Overmeyer, 845 F. Supp. 1178 (N.D. Ohio 1993).

Cort v. Ash, 422 U.S. 66 (1975) outlines the factors a court must consider in determining whether a federal statute creates a private right of action. These factors include (1) whether plaintiff belonged to "the class for whose especial benefit the statute was enacted," (2) whether there is "any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one," (3) whether implying such a remedy is "consistent with the underlying purposes of the legislative scheme," and (4) whether the cause of action is one "traditionally relegated to state law" such that "it

would be inappropriate to infer a cause of action based solely on federal law." Cort, 422 U.S. at 78. The Supreme Court has clarified that the "central inquiry" is "whether Congress intended to create, either expressly or by implication, a private cause of action." McDonald, 291 F.3d at 723 (citation omitted).

In McDonald, the Eleventh Circuit analyzed the Cort factors and determined FICA provides no private right of action. McDonald explained that FICA's legislative history is "completely devoid" of any evidence that Congress intended to create a private right of action, (id. at 724), and FICA is a tax-raising statute rather than a benefit-conferring statute. Id. at 724.[1] McDonald further reasoned that a private right of action would undermine the administrative procedures of the IRS, a result that is inconsistent with the underlying purposes of the legislation. Id. at 725.

The undersigned concurs with the analysis of those courts, including McDonald, which find that neither FICA nor FUTA creates a private right of action. Plaintiffs' request for "Payment of all FICA and FUTA contributions, which should have been made by the Defendant on behalf of Vap, to the appropriate governmental entities" should be stricken.[2]

---

[1] Some courts have found an implied private right of action. See e.g., Sanchez v. Overmeyer, 845 F. Supp. 1178 (N.D. Oh. 1993). In Sanchez, the court reasoned FICA conferred a benefit on the employer because the FICA tax helped fund Social Security which ultimately benefits employers. Sanchez, 845 F. Supp. at 1181. McDonald considered and rejected this reasoning stating "an employee's ability to collect Social Security is in no way dependent on his employer's compliance with FICA." McDonald, 291 F.3d at 724.

[2] Plaintiffs argue they are not alleging claims under FICA or FUTA, but are merely asking for FICA and FUTA contributions as a portion of the remedy owed for failing to pay Plaintiffs as employees. Prayers for relief are beyond the scope of Rule 12(b)(6) motions. Schwan v. CNH Am. LLC, 2006 WL 1215395, *35 (D. Neb. May 4, 2006). But Rule 12(f)(1) allows the court to strike "any redundant, immaterial, impertinent or scandalous matter" within a pleading, including the prayer for relief sua sponte. If Plaintiffs prevail, as to any wage recovery, Big Iron is required by federal law to pay FICA and FUTA contributions. Including this statement of the law in the prayer for relief is unnecessary, redundant, and subject to being stricken by the court.

II.     Motion to Arbitrate

The defendant moves to compel the arbitration of Plaintiffs' third claim which disputes the amount of commissions received from Defendant.

When deciding whether to compel arbitration, a two-part test is applied. USW, AFL-CIO-CLC v. Duluth Clinic, Ltd., 413 F.3d 786, 788 (8th Cir. 2005). The court "must first consider whether a valid agreement to arbitrate exists." Id. If a valid arbitration agreement exists, the court then considers the scope of the agreement. Id. "An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Id. (citing United Steelworkers of Am. V. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–83 (1960)).

Near the end of the Agreement, it states "[t]his contract contains an arbitration provision which may be enforced by the parties. (the arbitration provision is contained in the Operating Principles set forth in Exhibit B attached hereto.)" (Filing No. 14-3 at CM/ECF p. 3). The Operating Principles are attached to the Agreement and contain bulleted paragraphs with rules governing the Sales Representative position with Big Iron. The paragraph containing the arbitration agreement reads in its entirety:

> A Big Iron Independent Sales Representative is encouraged to work within their own territory. If items of equipment are listed from outside the Representative's territory, the commission earned will be distributed by agreement made between the two respective Independent Sales Representatives. If the two Independent Sales Representatives have reached an agreement, the Big Iron District Manager must be notified via email of such agreement. In case of any disputes, the parties mutually agree to appoint and meet with an arbitrator to resolve the issue of commission entitlement, and arbitration shall be the sole remedy for resolution of such disputes.

([Filing No. 14-3 at CM/ECF p. 6](#)).  There are no other arbitration agreements or provisions contained within the Agreement, Operating Principles, or other attached exhibits.

The parties agree that a valid arbitration agreement exists.  They disagree as to the scope of that agreement.  Defendant argues Plaintiffs' third claim for recovery of commissions is subject to arbitration under the "commission entitlement" language of the arbitration clause.  Plaintiff disagrees, stating the arbitration clause applies to only commission disputes between two sales representatives.

Under a plain reading of its language, the arbitration clause applies to disputes over commission sharing between Big Iron Sales Representatives when cross-territory work has been performed.  Considered in context, enforcement of the arbitration is limited to disputes arising when two sales representatives who cannot agree on how commissions should be "distributed . . . between the two respective Independent Sales Representatives."  It does not apply to commission disputes between Defendant and its sales representatives.  As such, Plaintiffs' claims are beyond the scope of the arbitration clause and are not subject to arbitration absent the current and mutual consent of the parties.

THE COURT HEREBY ORDERS: Defendant's Motion to Compel Arbitration, ([filing no. 12](#)), is denied.

IT IS RECOMMENDED to the Honorable John M. Gerrard, United States District Judge, pursuant to [28 U.S.C. § 636(b)](#), that the partial motion to dismiss filed by the defendant ([filing no. 12](#)), be granted in part and denied in part as set forth in the Findings above.

The parties are notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

Dated this 25th day of April, 2016

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.